## SUPREME COURT.

### In the matter of MICHAEL BARRETT.

Every citizen of the state is under the protection of the shield of the writ of *habeas corpus*, by the *constitution of the United States*, as well as that of the state. No conflict of jurisdiction between civil courts of the state and general government arises or can arise on *habeas corpus*, unless the prisoner has been committed by the direction of a *federal judge*.

The state courts may therefore properly issue this writ to inquire whether a prisoner, claimed to be held as a *deserter*, and a *substitute* duly mustered into a regiment, by a provost marshal, ever lawfully became a soldier, and whether he is lawfully in the custody of an officer of the federal government.

*Martial law* has never been proclaimed in New York, and the *civil courts* are in the full administration of their powers for dispensing justice. The military arm is *subordinate* here to the civil authority.

In *Ableman* agt. *Booth*, the marshal held the prisoner on the process of the federal court *after conviction*, and the state court had therefore no jurisdiction to grant a writ of *habeas corpus*. It would probably be a surprise to the judges who decided that case, to learn that the principles they there declared constituted authority for every *recruiting officer* or *captain of a military company* in the service of the general government, to claim that he held the men under him by virtue, not of the jurisdiction of any court, but of the *military authority of the United States*, and refuse to submit to an inquiry on *habeas corpus* by a state court, whether any of his men had been duly enlisted or were lawfully held by him.

*New York Special Term, August*, 1863.

HABEAS CORPUS to Robert Nugent, assistant provost marshal of the United States, to produce the person of

In the matter of Barrett.

Michael Barrett, an alleged infant, held by said marshal as a deserter, &c. The facts will sufficiently appear in the opinion of the court.

LEONARD, Justice. The provost marshal, Colonel Nugent, claims to hold the infant as a deserter from the thirteenth regiment, N. C. cavalry, and also as a substitute duly mustered into a regiment in Massachusetts, and refuses to produce him in court upon *habeas corpus.*

It is stated in the application, and is not denied in the return of the marshal, that the infant was under eighteen years of age at the time of his enlistment in the Massachusetts regiment, some three weeks since.

The claim of the provost marshal is to hold the infant by virtue of his authority as such officer, derived under laws of the United States.

Persons under eighteen years of age cannot be enlisted or subjected to military service.

It must be conceded that martial law has never been proclaimed in New York, and the civil courts are in the full administration of their powers for dispensing justice. The military arm is subordinate here to the civil authority.

The case of *Ableman* agt. *Booth* has been referred to as judicial authority for the ground taken by the provost marshal.

In that case the United States marshal could not have held Booth without process of law. The authority of law referred to by Judge TANEY embraced that fact.

The authority of the state courts to require the production of a prisoner ceases when the commitment has been made by the direction of a judge of the United States courts, but not without. The authorities and the practice have been uniform for years before the decision in *Ableman* agt. *Booth*, and ever since, to discharge prisoners held on process from the United States courts where

there had been no commitment under it by direction of a judge of the federal courts. An arrest merely, or the holding in custody, on process from a federal court, does not oust the state courts of jurisdiction to inquire into the detention on *habeas corpus*. Judge TANEY cannot be understood as overruling such authorities or practice when the authorities are not mentioned. The language of Judge TANEY must be understood to apply to the facts of the case before the court at the time. Booth was in custody on conviction for a criminal offence. The marshal there had the process of the federal court after conviction. That constituted the authority of law for holding the prisoner, referred to by Judge TANEY. The state court had, then, no jurisdiction even to grant a *habeas corpus* for his production, if those facts appeared.

There is no ground here to insist that Barrett has been committed, or that he is even held by virtue of any process, decree or judgment of a court of the United States, or any court.

Any captain of a military company in the service of the general government could claim with equal propriety that he held the men under his command by virtue of the authority of the United States, and refuse to submit to an inquiry on *habeas corpus* whether any of his men had been duly enlisted or were lawfully held by him.

The liberty of every citizen of the state is under the protection of the shield of this writ by the constitution of the United States as well as that of the state of New York. No conflict of jurisdiction between civil courts of the state and general government arises or can arise on *habeas corpus*, unless a prisoner has been committed by the direction of a federal judge.

There is no military court in this case whose jurisdiction is interfered with, so it will not be necessary to consider a question of that character.

In the matter of Barrett.

It has been suggested that a decision adverse to the claims of the provost marshal will bring on an unpleasant conflict of authority.

This is not a question sought for by the court. It is brought into court and must be decided according to the law of the land, and not by any rule of expediency. Expediency is a rule that varies with times and circumstances. It might require the courts to recall next week a decision made to-day, and thus the law be brought into contempt.

While the authority of the courts is upheld by the respect of the public, civil and military, in a community eminently loyal to the government, there can be no fear that the law will not be faithfully administered. When the courts cease to be independent, and seek for rules of expediency instead of law, it may be time for alarm, both to civil and military authorities.

This is not an inquiry whether Michael Barrett is a deserter or not ; the inquiry is, whether he ever lawfully became a soldier, and whether he is lawfully in the custody of an officer of the federal government.

The facts stated by Colonel Nugent cannot prevent this inquiry. The soldier must be produced, or else the military authorities must assume to prevent the administration of the law of the land.

My own duty I consider to be clear. An order may be entered that Colonel Nugent produce Barrett at 10 o'clock A. M. of the next business day after he receives notice of this order.